UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| E. DAVID WESCOTT,<br>*an individual residing in*<br>*Dedham, County of Hancock, State of*<br>*Maine*,<br><br>and<br><br>RUSSELL JOHNSON BEAUPAIN,<br>*a Maine Limited Liability Company*,<br><br>           Plaintiffs,<br><br>v.<br><br>HON. VALERIE STANFILL,<br>*in her Official Capacity as Chief Justice,*<br>*Maine Supreme Judicial Court*,<br><br>AMY QUINLAN, ESQUIRE,<br>*in her Official Capacity as State Court*<br>*Administrator for the State of Maine,*<br>*Judicial Branch*,<br><br>MAINE JUSTICE FOUNDATION,<br><br>and<br><br>MAINE BOARD OF OVERSEERS<br>OF THE BAR,<br><br>           Defendants. | CASE NO.: 1:24-cv- |

## COMPLAINT

### INTRODUCTION

1. Thomas Jefferson stated: "To compel a man to furnish contributions of money for the propagation of opinions which he disbelieves is sinful and *tyrannical*." I. Brant, JAMES MADISON: THE NATIONALIST 354 (1948) (emphasis added). This case concerns the well-established right of the public, under the First and Fourteenth Amendments to the United

States Constitution, to be free from the tyranny of compelled speech. Plaintiffs ask this Court to invalidate Maine Bar R. 6, as it is being implemented by the Supreme Judicial Court of the State of Maine, which requires lawyers to segregate client funds into Interest on Lawyers' Trust Accounts ("IOLTA" accounts) and thereby requires lawyers and their clients to support causes that they oppose.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 (3) and (4), which provide original jurisdiction over suits brought under 42 U.S.C. § 1983, and pursuant to 28 U.S.C. § 1331, which provides jurisdiction over all cases brought under the Constitution and laws of the United States. Jurisdiction also lies under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

3. Maine Bar R. 6 is the offending rule, which affects the Plaintiffs' rights under the First Amendment to the United States Constitution as incorporated against the State of Maine through the Fourteenth Amendment to the United States Constitution.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the actions giving rise to this complaint occurred within the State of Maine.

## PLAINTIFFS

5. Plaintiff E. David Wescott ('Wescott") is an individual who used the legal services of Bloomer Russell Beaupain, nka Russell Johnson Beaupain, and who is a resident of the State of Maine.

6. Plaintiff Russell Johnson Beaupain, fka Bloomer Russell Beaupain ("RJB"), is a limited liability company with a principal place of business in Bangor, Maine.

## DEFENDANTS

### Hon. Valerie Stanfill, Chief Justice

7. Defendant Hon. Valerie Stanfill ("Chief Justice Stanfill") is the Chief Justice of the State of Maine Supreme Judicial Court. On information and belief, Chief Justice Stanfill is responsible for the operations of the Maine Judicial Branch.

8. Chief Justice Stanfill is sued in her official capacity only. Plaintiffs seek declaratory and injunctive relief against Chief Justice Stanfill and her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

### Amy Quinlan, Esquire

9. Defendant Amy Quinlan, Esquire ("Defendant Quinlan") is the State Court Administrator of the State of Maine Judicial Branch. On information and belief, Defendant Quinlan oversees all Court operations for the Maine Judicial Branch.

10. Acting in her official capacity, Defendant Quinlan, along with those acting under her direction and supervision, has implemented the policy of the State of Maine Judicial Branch that requires law firms and clients to unconstitutionally subsidize and fund organizations, speech, and causes with which they do not agree.

11. Defendant Quinlan is sued in her official capacity only. Plaintiffs seek declaratory and injunctive relief against Defendant Quinlan and her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her discretion or under her control.

### Maine Justice Foundation

12. Defendant Maine Justice Foundation is a nonprofit corporation that is directed to receive interest from IOLTA accounts, with its principal place of business in Hallowell, Maine.

### Maine Board of Overseers of the Bar

13. Defendant Maine Board of Overseers of the Bar is an organization located in Augusta, Maine, which regulates the operation and conduct of Maine lawyers, and which oversees compliance with the rules requiring the use of IOLTA accounts.

### RELEVANT NON-PARTIES

### Cumberland Legal Aid Clinic

14. Cumberland Legal Aid Clinic is a clinical program of the University of Maine School of Law, located in Portland, Maine, and is a small legal services provider, in which clients are represented by "student attorneys," *i.e.*, law students specially licensed by state and federal courts to provide legal services to low-income clients. The student attorneys practice under the supervision of fully licensed attorney faculty members. The clinic represents low-income individuals in the counties of Cumberland, York, Sagadahoc, and Androscoggin in many kinds of civil, criminal, juvenile, and family law matters.

15. Cumberland Legal Aid Clinic is a recipient of IOLTA funds.

16. In 2019, 2020, and 2021, Cumberland Legal Aid Clinic received $81,499.90, $73,736.94, and $127,451.62, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

17. In 2019, 2020, and 2021, Cumberland Legal Aid Clinic used Defendant Maine Justice Foundation funds to engage in systemic advocacy. For instance: (1) Cumberland Legal Aid Clinic gave priority to potential clients based on sexual orientation and immigration status,

and (2) Cumberland Legal Aid Clinic hired full-time fellows to work on "policy development."

### Immigration Legal Advocacy Project

18. Immigration Legal Advocacy Project ("ILAP") is a recipient of IOLTA funds.

19. In 2019, 2020, and 2021, ILAP received $65,890.17, $68,064.87, and $117,647.64, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

20. ILAP's website proudly proclaims on its "Systemic Advocacy" page:

> ILAP leads important advocacy efforts at the local, state and federal levels to improve laws and policies that affect all immigrants in Maine and prevent the passage of those that would have a negative impact. In this work, we partner closely with the Maine Immigrants' Rights Coalition, ACLU of Maine, Maine Equal Justice, University of Maine School of Law and other organizations and groups across the state [. . .].
>
> To achieve our vision of a U.S. immigration system that reflects true justice and equity, we must push for a complete rebuilding rather than simply reforming the current system that is rooted in systemic racism.[1]

21. In 2019, 2020, and 2021, ILAP used Defendant Maine Justice Foundation funds to engage in such systemic advocacy.

### Legal Services for the Elderly

22. Legal Services for the Elderly ("LSE") is an organization that provides individuals age 60 and older with free legal advice.

23. In 2019, 2020 and 2021, LSE received $262,617.12, $249,571.19, and $431,374.70, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

24. In 2019, 2020 and 2021, LSE used Defendant Maine Justice Foundation funds to engage in systemic advocacy.

---

[1] Immigrant Legal Advocacy Project, *Systemic Advocacy*, available at: https://ilapmaine.org/systemic-advocacy

### Maine Equal Justice

25. Maine Equal Justice is an organization that "[a]dvocate[s] for fair public policies in the legislature and with governmental agencies," "[p]rovide[s] direct legal services and representation through impact litigation on systemic issues," and "[p]artner[s] with diverse low-income communities and agencies through outreach, organizing, and education."[2]

26. In 2019, 2020 and 2021, Maine Equal Justice received $137,922.91, $119,113.52, and $205,883.38, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

27. In 2019, 2020 and 2021, Maine Equal Justice used Defendant Maine Justice Foundation funds to engage in systemic advocacy.

28. Maine Equal Justice has deployed its resources towards such controversial systemic advocacy as Medicaid expansion, and its website notes that its efforts resulted in passing a bill to expand Medicaid with "nearly 60%" of the vote.[3]

### Pine Tree Legal Assistance

29. Pine Tree Legal Assistance (PTLA) is a recipient of IOLTA funds.

30. In 2019, 2020 and 2021, PTLA received $604,353.11, $538,846.88, and $931,377.19, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

31. In 2019, 2020 and 2021, PTLA used Defendant Maine Justice Foundation funds to engage in systemic advocacy.

### Volunteer Lawyers Project

32. Volunteer Lawyers Project (VLP) is a recipient of IOLTA funds.

---

[2] Maine Equal Justice, *About Us*, *available at*: https://maineequaljustice.org/about-us/
[3] Maine Equal Justice, *Solutions*, *available at*: https://maineequaljustice.org/solutions/

33. In 2019, 2020 and 2021, VLP received $76,484.52, $51,048.65, and $88,235.73, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

34. In 2019, 2020 and 2021, VLP used Defendant Maine Justice Foundation funds to engage in systemic advocacy.

### Disability Rights Maine

35. Disability Rights Maine is a recipient of IOLTA funds.

36. In 2019, 2020 and 2021, Disability Rights Maine received $37,741.99, $34,032.43, and $58,823.82, respectively, in IOLTA-funded grants from Defendant Maine Justice Foundation.

37. In 2019, 2020 and 2021, Disability Rights Maine used Defendant Maine Justice Foundation funds to engage in systemic advocacy.

### FACTUAL BACKGROUND

38. On May 8, 2019, the Maine Supreme Judicial Court (the "Law Court") promulgated a proposed amendment to M. Bar R. 6(e) to prohibit the use of IOLTA funds for:

    (1) supporting or opposing candidates for elected office,
    (2) supporting or opposing ballet initiatives or referenda,
    (3) lobbying in support of or in opposition to pending proposed legislation,
    (4) seeking public support through the media including social media to support or oppose legislation, valid initiatives or referenda for candidates for elected office, or
    (5) voter registration, voter education, voter signature gathering, or get out to vote actions.

39. The Law Court also proposed amendments to M. Bar R. 6 ("Rule 6") regarding accounting practices and setting a cap for the use of IOLTA funds for administrative purposes.

40. After receiving comments, on June 27, 2019, the Law Court moved forward with its amendments to Rule 6 regarding accounting practices, but the Law Court established a working group to address the extent to which Rule 6 permitted the use of IOLTA funds for

various types of systemic advocacy. The purpose of the working group was to "obtain broad based stakeholder input and analysis of a recent proposal to prohibit the use of Court mandated IOLTA funds for legislative lobbying and political candidate advocacy."

41. The working group was not, in fact "broad based." Instead, its members were hand selected to achieve a particular outcome.

42. The working group published its findings, which concluded that IOLTA funds could be used for legislative lobbying, political candidate advocacy, and systems advocacy, in December 2019.

43. Two individual dissenting opinions were also published December 2019.

44. The majority opinion favored keeping systemic advocacy and legislative lobbying as allowed by the Rule. The minority opinions opposed the continuation of these practices.

45. Following a public hearing on March 2, 2020, the Law Court continued to allow the use of IOLTA funds for systemic advocacy and legislative lobbying. *See* Statement of the Court's Decision on Proposed Amendments to the Use of IOLTA Funds, March 9, 2020.

46. Prior to 2007, participation in the IOLTA program was voluntary. Subsequent to a rule change in 2007, participation has been and remains mandatory.

47. Not every state has a mandatory IOLTA program.[4]

48. "The six legal services groups for whom 80% of the IOLTA funds are earmarked have been selected through an ill-defined process with little or no public visibility or participation, and only limited accountability to assure that funds are spent effectively."[5]

---

[4] American Bar Association, *Status of IOLTA Programs*, *available at*: www.americanbar.org/groups/interest_lawyers_trust_accounts/resources/status_of_iolta_programs/

[5] Separate Statement of Non-Concurrence in Amendments to the Bar Rules by Alexander, J. (2007), *available at*: https://www.mebaroverseers.org/docs/Rules06Background.pdf.

49. Running a law office imposes significant costs, including the costs of regulatory compliance.

50. Defendant Maine Justice Foundation distributes IOLTA funds to Cumberland Legal Aid Clinic, ILAP, LSE, Maine Equal Justice, Pine Tree Legal Assistance, Volunteer Lawyers Project, and Disability Rights Maine (collectively, "Legal Aid Organizations"), thereby directly funding causes adverse to Plaintiffs' interests and providing critical general operating funds to fund day-to-day operations of organizations adverse Plaintiffs' interests.

51. The Legal Aid Organizations are almost universally "left-wing" in their political orientation as generally understood in the context of twenty-first century America.

52. The Law Court, by implementing a rule favoring and funding such uniformly left-leaning organizations, creates the public perception that the judicial branch favors one political party or one ideology over another, thereby undermining the apparent impartiality and objectivity of the judiciary as a separate branch of state government.

53. The use of mandatory IOLTA money violates the First and Fourteenth Amendment rights of the Plaintiffs who do not hold to the agendas of the recipient Legal Aid Organizations.

54. The use of mandatory IOLTA money violates the First and Fourteenth Amendment rights of lawyers who are forced to financially support systemic advocacy with regulatory and compliance costs. Lawyers' First and Fourteenth Amendment rights are further implicated by the implicit lending of their personal and professional imprimatur to whatever cause is being advocated.

55. The direct or indirect involvement of the judiciary with "systemic advocacy" undermines separation of powers, the appearance of impartiality, and public faith in the judicial system.

56. The methodology by which "core" groups are chosen and funded is murky, arbitrary, and does not allow for the proliferation of competing viewpoints.

57. The use of IOLTA money for systemic advocacy diverts funds from direct legal services to the poor.

## COUNT I
### Deprivation of Rights Under 42 U.S.C. § 1983
### (Violation of First and Fourteenth Amendments)

58. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set out fully herein.

59. Defendants, individually or collectively acting under color of state law, deprived Plaintiff RJB of its First and Fourteenth Amendment rights to be free from compelled speech by requiring it to maintain an IOLTA account and store client funds therein, the interest on such funds being used to support causes that contravene the sincerely held beliefs of the members of Plaintiff RJB.

60. Defendants, individually or collectively acting under color of state law, have also deprived Plaintiff Wescott of his First and Fourteenth Amendment rights to be free from compelled speech by compelling the contribution of interest from his retainer funds—interest that would otherwise accrue to his benefit—to support causes that contravene the sincerely held beliefs of Plaintiff Wescott.

61. The mandatory IOLTA and its provision of funds for systemic advocacy, as implemented by Defendants, injure Plaintiffs RJB and Wescott by requiring them to undergo the costs of acquiring and maintaining IOLTA accounts.

62. The mandatory IOLTA and its provision of funds for systemic advocacy, as implemented by Defendants, further injure Plaintiffs RJB and Wescott by creating the public perception

that their participation in the IOLTA program implies their endorsement of the views that Defendants use IOLTA funds to support.

63. There is no practicable alternative available to Plaintiffs RJB and Wescott to store client retainer funds other than to maintain an IOLTA account.

64. If there were any practicable alternative available, Plaintiffs RJB and Wescott would employ that alternative rather than storing client retainer funds in the mandatory IOLTA account.

65. The mandatory IOLTA and its provision of funds for systemic advocacy, as implemented by Defendants, thus further injures Plaintiffs RJB and Wescott by imposing an imminent threat of severe penalties—up to and including disbarment—for failing to store client retainer funds in an IOLTA account.

66. Plaintiffs RJB and Wescott sincerely believe that they have been compelled by Defendants into contributing, by means of the IOLTA program, to causes that they find morally, ethically, religiously, and politically abhorrent.

67. In June 2023, Plaintiff Wescott transmitted a retainer in the amount of $2,500.00 to Plaintiff RJB for deposit in Plaintiff RJB's mandatory IOLTA account.

68. Plaintiff Wescott's retainer was an advance payment, such that interest accrued on the retainer that, but for the mandatory IOLTA program, would have accrued to Plaintiff Wescott's benefit.

69. In compliance with the mandatory IOLTA program, the interest that accrued on Plaintiff Wescott's retainer was not transferred to Plaintiff Wescott but was instead transferred to the Maine Justice Foundation to support causes adverse to Plaintiff Wescott's interest.

70. Because all lawyers in Maine are subject to the mandatory IOLTA program, Plaintiff Wescott has no choice but to pay retainer funds to a law firm that will store his funds in an IOLTA account. The alternative of not hiring counsel in the State of Maine is not practicable.

71. Plaintiff Wescott sincerely believes that he has been compelled by Defendants into contributing, by means of the IOLTA program, to causes that he finds morally, ethically, religiously, and politically abhorrent.

72. An order from this Court declaring the IOLTA unconstitutional as implemented by Defendants will redress Plaintiffs' harms.

73. Alternatively, an order from this Court that enjoins Defendants from *requiring* lawyers to participate in the IOLTA program (that is, an order that effectively permits an opt-out, such that lawyers could store all client funds, even those "small in amount or held for a short period of time," Maine Bar R. 6, in private accounts wherein interest accrues for the client's benefit) will redress Plaintiffs' harms.

74. Defendants have thus violated the First and Fourteenth Amendment rights of Plaintiffs.

**PRAYER FOR RELIEF**

Wherefore, based on the foregoing facts, Plaintiffs respectfully request that this Court grant the following relief: (1) declare that Rule 6, as currently enforced, violates the First and Fourteenth Amendments by compelling speech of lawyers or clients, and enjoin Defendants from enforcing it insofar as it permits mandatory IOLTA funds to subsidize systemic advocacy or legislative lobbying; (2) declare that it is unconstitutional for Defendants to permit IOLTA funds to be used for the five purposes set forth in Paragraph 38 of this Complaint; (3) alternatively, enjoin Defendants from requiring lawyers to participate in the IOLTA (that is, allow an opt-out provision)

and require Defendants to provide notice to lawyers and clients that interest from IOLTA funds may be used for systemic advocacy (thereby permitting clients to make an informed decision whether to use the services of a lawyer who does *not* opt out); and (4) award Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Date: August 8, 2024                                            */s/ Stephen C. Smith*
Stephen C. Smith Bar No. 8720
STEVE SMITH TRIAL LAWYERS
191 Water Street
Augusta, ME 04330
207-622-3711
info@mainetriallaw.com

Kyle Singhal*
Hopwood & Singhal PLLC
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
(817) 212-9041
kyle@hopwoodsinghal.com
*pending admission pro hac vice*