UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| E. DAVID WESCOTT and RUSSELL JOHNSON BEAUPAIN, *a limited liability company*, <br><br> Plaintiffs <br><br> v. <br><br> HON. VALERIE STANFILL, *in her official capacity as Chief Justice, Maine Supreme Judicial Court,* AMY QUINLAN, ESQUIRE, *in her official capacity as State Court Administrator for the State of Maine Judicial Branch,* MAINE JUSTICE FOUNDATION, and MAINE BOARD OF OVERSEERS OF THE BAR, <br><br> Defendants | No. 1:24-cv-00286-LEW |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Maine, like nearly every other state, has an Interest on Lawyers' Trusts Accounts ("IOLTA") program. IOLTA-generated interest is pooled to give free legal aid to poor Mainers and otherwise support access to the justice system. Plaintiff David Wescott is a Maine citizen and Plaintiff Russell Johnson Beaupain LLC ("RJB") is a law firm hired to represent him. They claim Maine's IOLTA program forces them to subsidize certain speech in violation of their First Amendment rights. Plaintiffs have filed their Complaint naming three State Defendants for their role in promulgating and enforcing IOLTA rules: Chief Justice Valerie Stanfill of the Maine Supreme Judicial Court, State Court

Administrator Amy Quinlan, and the Maine Board of Overseers of the Bar. Plaintiffs also sue private entity Maine Justice Foundation ("MJF"), which is charged with receiving and distributing IOLTA funds.

Before the Court are both Defendants' Motions to Dismiss (ECF Nos. 21, 22). Defendants argue that Plaintiffs have failed to state a plausible claim and lack standing with respect to Defendant Maine Justice Foundation, and that the Board of Overseers is shielded by sovereign immunity. On this last point, Plaintiffs agree. Plaintiffs' claims against the Board are thus dismissed. With respect to the remaining claims, for the following reasons Defendants' motions are granted and Plaintiffs' claims are dismissed.

## BACKGROUND

Maine and forty-four other states have mandatory IOLTA programs. In general, IOLTA programs take funds that cannot otherwise generate income for clients or their attorneys, place them in an interest-bearing account, and use the interest to achieve charitable goals. Maine Bar Rule 6 provides that when an attorney holds client funds that are nominal or short-term "such that they cannot earn interest or dividends for the client in excess of the costs incurred to secure such income," the attorney must place those funds into an IOLTA account. Me. Bar R. 6(e); *see also* R. 1.15. Institutions holding IOLTA funds release the interest to Defendant Maine Justice Foundation. R. 6(c)(4)(A). Maine Justice Foundation, in turn, distributes this interest "to provide services that maintain and enhance resources available for access to justice in Maine, including those services that achieve improvements in the administration of justice and provide legal services,

education, and assistance to low-income, elderly, or needy clients." *Id.* R. 6(e). Maine Justice Foundation has given IOLTA generated money to:

> Cumberland Legal Aid Clinic, a Maine School of Law student clinic that represents low-income clients in civil cases;
>
> Immigrant Legal Advocacy project, which is the only state-wide immigration legal services organization and engages in legislative lobbying to that end;
>
> Legal Services for Maine Elders, which offers free legal aid to Mainers over 60 and engages in legislative lobbying;
>
> Maine Equal Justice, a nonprofit that provides direct legal services and participates in community organizing and legislative lobbying;
>
> Pine Tree Legal Assistance, an organization that provides free civil legal assistance, disseminates information on civil legal rights, and provides community legal education; and
>
> Maine Volunteer Lawyers Project, which recruits volunteer attorneys to give free legal advice and representation.

Plaintiffs find the causes these organizations support "morally, ethically, religiously, and politically abhorrent." Pls.' Am. Compl. ¶ 88. Nearly two years ago, Plaintiff Wescott paid $2,500 to Plaintiff RJB to retain the firm's legal services. RJB placed that money in an IOLTA account and the generated interest was released to the Maine Justice Foundation. In Plaintiffs' view, this is exactly the form of compelled speech that the Founders decried.

Plaintiffs thus launch an as-applied constitutional challenge to the IOLTA program. Plaintiffs seek a declaratory judgment that Rule 6 of the Maine Bar Rules is unconstitutional as currently enforced, a declaratory judgment that IOLTA funds can never be used for certain enumerated purposes, an injunction barring Defendants from enforcing Rule 6 and/or enjoining Defendants from mandating participation in the IOLTA program.

Defendant Maine Justice Foundation responds that Plaintiffs lack standing. State Defendants add that Plaintiffs have failed to allege facts sufficient to plausibly support their First Amendment claim.

## DISCUSSION

### A. STANDING

In its Motion to Dismiss (ECF No. 22), the Maine Justice Foundation asserts that Plaintiffs lack standing to pursue a claim against it. Standing is a threshold jurisdictional inquiry. Article III courts are constitutionally limited to hearing a "case" or "controversy." U.S. CONST. art. III, § 2. To satisfy this requirement, a plaintiff needs to demonstrate they have suffered an "'injury in fact' . . . 'fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs bear the burden of "demonstrat[ing] standing for each claim they press' *against each defendant*, 'and for the form of relief that they seek.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024) (emphasis added) (quoting *Transunion LLC v. Ramirez*, 594 U.S. 413, 431).

Plaintiffs' prayer for relief requests this Court (1) declare Rule 6 a violation of the First and Fourteenth Amendments as applied to Plaintiffs and enjoin Defendants from enforcing it, (2) declare it unconstitutional for IOLTA funds to be used for certain purposes,[1] or alternatively (3) enjoin Defendants from requiring lawyers to participate in

---

[1] Plaintiffs specifically request I declare it unconstitutional for IOLTA funds to be used "for the five purposes set forth in Paragraph 38 of this Complaint." Pls. Am. Compl. (ECF No. 18) at 17. Paragraph 38 *(continued next page)*

the IOLTA program. Maine Justice Foundation neither promulgated nor enforces Rule 6. Accordingly, it argues correctly that Plaintiffs' have no standing to sue it.

Plaintiffs assert that traceability is met because Maine Justice Foundation's distribution of funds "is a link in the chain that inflicts Plaintiffs' harm . . . [a] simple, first-year law school 'but for' causation." Pls. Response to Maine Justice Foundation's Mot. (ECF No. 24) at 2-3. Plaintiffs also suggest that redressability is met because "a decision of *this Court* would redress Plaintiffs' harm." *Id.* at 4. Plaintiffs' theory on standing seems to suggest that they could sue anyone involved in carrying out Maine's IOLTA program because, in the course of rendering a judgment, this Court could enjoin state enforcement of Rule 6. Based on that rationale, their hypothetical first-year law student would certainly find it appropriate for Plaintiff Wescott to sue Plaintiff RJB. "But for" RJB placing Wescott's money in an IOLTA account, Wescott's alleged harm would not have occurred.

Luckily for our law student, there is helpful precedent. "[W]hen a statute is challenged as unconstitutional, the proper defendants are the government officials whose role it is to administer and enforce it." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003) (addressing redressability); *see also N.H. Right to Life PAC v. Gardner*, 99 F.3d 8,

---

of the Amended Complaint contains no such list. I assume this is a typographical error as Paragraph 38 of the Original Complaint (ECF No. 1) lists:

    (1) supporting or opposing candidates for elected office,
    (2) supporting or opposing ballet initiatives or referenda,
    (3) lobbying in support of or in opposition to pending proposed legislation,
    (4) seeking public support through the media including social media to support or oppose legislation, valid initiatives or referenda for candidates for elected office,
    (5) voter registration, voter education, voter signature gathering, or get out to vote actions.

Compl. ¶ 38.

13 (1st Cir. 1996) ("[W]hen a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it."). This axiomatic principle stems from the fact that Plaintiffs can obtain complete redressability from a favorable ruling solely against State Defendants whereas the same is not true for a favorable ruling solely against MJF.

If this Court enjoined only Maine Justice Foundation from enforcing Rule 6 the effect would be the same as if I enjoined RJB from complying with Rule 6, or as if I enjoined banks that disperse IOLTA funds to Maine Justice Foundation from enforcing Rule 6. The effect being nothing because those entities do not enforce Rule 6. The Maine Justice Foundation, just like RJB, is mandated to take certain actions under Rule 6. But Maine Justice Foundation itself does not police whether it has taken the appropriate actions or if it has the authority to stop dispersing IOLTA funds without incurring a penalty. *See* Me. Bar R. 6(e)(1) (requiring the Maine Justice Foundation to report to the Maine Supreme Judicial Court on IOLTA spending).

Plaintiffs plead that this Court may still enjoin Maine Justice Foundation from distributing Plaintiffs' IOLTA interest. But absent an order also enjoining State Defendants from enforcing Rule 6 such an injunction would be meaningless. If Rule 6 is constitutional, Maine Justice Foundation would be wrongfully enjoined. If Rule 6 is unconstitutional, then State Defendant's would be enjoined from enforcing it and Plaintiffs would not have to participate in the IOLTA program, regardless of what the Foundation does. Accordingly, Plaintiffs' lack standing in their claim against Maine Justice

Foundation in the sense that the claim against the Foundation wants redressability. Plaintiffs' claim against Defendant Maine Justice Foundation is DISMISSED.

### B.  FAILURE TO STATE A CLAIM

State Defendants Chief Justice Stanfill and Court Administrator Quinlan also contend that the Plaintiffs have failed to state a claim under the Federal Rules. To avoid dismissal Plaintiffs must provide "a short and plain statement of the claim showing [they] are entitled to relief." Fed. R. Civ. P. 8(a)(2). In practice, this means Plaintiffs' Amended Complaint (ECF No. 18) must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the Court will accept factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). But the Court may ignore conclusory statements that merely recite elements of the claim. *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) ("We do not credit legal labels or conclusory statements, but rather focus on the complaint's non-conclusory, non-speculative factual allegations and ask whether they plausibly narrate a claim for relief.").

The State Defendants argue that Plaintiffs have failed to allege facts plausibly showing the IOLTA program compels speech. First, Defendants point out that the IOLTA program only applies to nominal or short-term client funds held in trust by an attorney, so Plaintiff, RJB could structure its clients' payments to avoid Rule 6 entirely. Second, Defendants urge that even if Plaintiffs are as a practical matter forced into participating in

7

the IOLTA program, Plaintiffs have not demonstrated a sufficient connection between their allegedly compelled action and the speech at issue.

In *Washington Legal Foundation v. Massachusetts Bar Foundation*, the First Circuit considered a near-identical situation: plaintiffs alleged "the collection and use of interest . . . generated from the IOLTA trust accounts . . . deprive [plaintiffs] of [their] right to freedom of speech and association." 993 F.2d 962, 978 (1st Cir. 1993). The First Circuit determined in a subsidized speech claim, "there must be a connection between dissenters and the organization so that dissenters reasonably understand that they are supporting the message propagated by the recipient organizations." *Id.* at 979.[2] The First Circuit found no such connection:

> The process by which the IOLTA program collects and uses the accrued interest does not affect the plaintiffs' funds held in IOLTA accounts nor does it require any other expenditures or efforts by the plaintiffs. Put simply, the plaintiffs have not been compelled by the IOLTA Rule to contribute their money to the IOLTA program. Rather, the IOLTA program recipient organizations benefit from an anomaly created by the practicalities of accounting, banking practices, and the ethical obligation of lawyers. The interest earned on IOLTA accounts belongs to no one, but has been assigned, by the Massachusetts Supreme Judicial Court, to be used by the IOLTA program.

---

[2] In reaching this principle, the First Circuit considered precedent from several cases involving union fees and bar association dues. These cases followed *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which was recently overruled. *See Janus v. Am. Fed'n of State, Cnty, & Mun. Emps.*, 585 U.S. 878, 886 (2018). Plaintiffs plead *Washington Legal Foundation* "was predicated expressly on the holding of [*Abood*] which *Janus* directly overruled." Pls.' Response to State Defs. (ECF No. 23) at 11. But this overruling has no bearing on the First Circuit's nexus requirement. Both *Janus* and *Abood* dealt with mandatory, direct fees that subsidized unions and clearly implicated the First Amendment. *Janus* found that the state interest recognized in *Abood*—maintaining "labor peace" and preventing "free riders"—could not survive scrutiny because there were less restrictive means to achieve those ends. *Janus*, 585 U.S. at 895-901. In other words, *Janus* does not proscribe *Washington Legal Foundation*'s threshold inquiry into whether a particular state program is a form of compelled speech. And in any event, I am cautious to assume the First Circuit shares Plaintiffs' view of *Janus*'s effect on *Washington Legal Foundation*. *See Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority.").

*Id.* at 980 (footnote omitted); *see also id.* n.16 ("We note that the plaintiff-lawyers are required by the IOLTA Rule to set up IOLTA accounts in banks and deposit appropriate client funds therein. Because a comparable effort would be necessary to set up non-interest bearing accounts for the deposit of client funds, we find it inconsequential for First Amendment analysis."). In the context of takings, the Supreme Court has endorsed the conclusion that clients are not entitled to IOLTA generated interest and "any conceivable net loss to [clients is] the consequence of [attorney's] incorrect private decisions rather than any state action." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 239-40 (2003) ("The District Court was therefore entirely correct when it made the factual finding that in no event can the client-depositors make any net return on the interest accrued in these accounts. Indeed, if the funds were able to make any net return, they would not be subject to the IOLTA program." (internal quotation marks omitted)).

In the end, Plaintiffs have submitted a complaint alleging facts the First Circuit has already found insufficient to state a claim. Plaintiffs contend that at this stage I must accept their factual allegation "that the IOLTA program creates the public perception that [their] participation in the IOLTA program implies [their] endorsement of the views Defendants use IOLTA funds to support." Pls.' Response to State Defs. at 12. Such an endorsement is predicated on Plaintiffs' statement that the IOLTA "interest would otherwise accrue to [Wescott's] benefit." Am. Compl. ¶ 82. That is simply false. Unless RJB is mismanaging Wescott's funds, absent the IOLTA program Wescott would not see a penny of interest as it would not cover the financial institution's cost of handling his funds. While I accept

well-plead facts as true, I am not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Thus, the statements Plaintiffs request I accept as true are exactly the kind of conclusory, element-of-the-offense statements the Court is entitled to ignore. *See Cheng*, 51 F.4th at 443. Discounting these statements, Plaintiffs fail to allege facts sufficient to support a plausible First Amendment claim because they cannot establish being compelled to subsidize any speech.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 21 and 22) are GRANTED and Plaintiffs' claims are DISMISSED.

**SO ORDERED.**

Dated this 2nd day of April, 2025.

                                                  /s/ Lance E. Walker
                                                  Chief U.S. District Judge